TYMKOVICH, Circuit Judge,
concurring.
I write separately to emphasize what I see as an unnecessary extension of the CDA’s terms “responsible” and “development,” thereby widening the scope of what constitutes an “information content provider” with respect to particular information under the Act. See 47 U.S.C. § 230(c)(1), (f)(3).
The majority holds that by soliciting third-parties to obtain and then exposing the confidential telephone records to public view, Accusearch is responsible—at least in part—-for developing that information. Under this definition, the line between passive posting of tortious or unlawful commentary, news articles, or other previously unpublished information and content development depends on an amorphous analysis of the motivations of the content provider in soliciting or acquiring that information. In the majority’s view, a content provider seeking out the information in good faith may be able to obtain CDA immunity for any subsequent liability, as it would not have been “responsible, in whole or in part, for the ... development of [that] information.” § 230(f)(3). If the provider’s motivations are not in good faith, however, the majority’s approach transforms the provider into a developer of that information. The provider would then be deemed the information content provider for that information and lose its entitlement to CDA immunity. Instead of embarking on this path, I would avoid the need to interpret the CDA in the first instance.
I agree with the majority that Accusearch violated the FTCA, though I reach this conclusion because I believe the FTC sought and ultimately held Accusearch liable for its conduct rather than for the content of the information it was offering on the Abika.com website. Section 230 only immunizes publishers or speakers for the content of the information from other providers that they make public. § 230(c)(1) (“No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.”). The CDA says nothing about immunizing publishers or speakers for their own conduct in acquiring the information. Indeed, other courts have explicitly recognized this distinction. E.g., 800-JR Cigar, Inc. v. GoTo.com, Inc., 437 F.Supp.2d 273, 295 (D.N.J.2006) (“[I]mmunity under the Act applies to any *1205 cause of action that would make service providers liable for information originating with a third-party user of the service. Immunity does not seem to fit here because the alleged fraud is the use of the trademark name in the bidding process, and not solely the information from third parties that appears on the search results page. It is not the purpose of the Act to shield entities from claims of fraud and abuse arising from their own pay-for-priority advertising business, rather than from the actions of third parties.”); Mazur v. eBay Inc., No. C 07-03967 MHP, 2008 WL 618988, at *9, 12 (N.D.Cal. Mar. 4, 2008) (“The CDA does not immunize [a content provider] for its own fraudulent misconduct. ... [Here,] eBay’s statement regarding safety affects and creates an expectation regarding the procedures and manner in which the auction is conducted and consequently goes beyond traditional editorial discretion.”).
A recent Ninth Circuit case succinctly summed up the scope of Section 230 immunity with respect to various torts, stating:
[W]hat matters is whether the cause of action inherently requires the court to treat the defendant as the “publisher or speaker” of content provided by another. To put it another way, courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant’s status or conduct as a “publisher or speaker.” If it does, section 230(c)(1) precludes liability.
Barnes v. Yahoo!, Inc., 565 F.3d 560, 566 (9th Cir.2009).
To make clear how the FTC sought to hold Accusearch liable, a quick review of Accusearch’s conduct is helpful. Through its Abika.com website, Accusearch offered paying consumers the opportunity to obtain private confidential telephone records of almost any individual with a cellular or landline telephone. To fulfill a consumer’s request for such information, Accusearch would solicit and ultimately enlist various third-party “researchers” to “dig up” these confidential records. These third-party “researchers” would use various fraudulent or unlawful means to obtain these records from telecommunications carriers in violation of the Telecommunications Act, § 222. The “researchers” would then sell the records to Accusearch.
In its complaint, the FTC expressly addressed the conduct for which it sought to hold Accusearch liable. In particular, using Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC contended Accusearch “surreptitiously obtain[ed] and s[old] confidential customer phone records without the customer’s knowledge or authorization.” ApliApp., Vol. I at 19 ¶ 1. In reference to Accusearch’s business model, the FTC noted that “[f]or a fee, Defendants have offered to obtain ‘Details of incoming or outgoing calls from any phone number, prepaid calling card or Internet Phone. Phone searches are available for every country of the world.’ ” Id. at 21 ¶ 9. Further, and most importantly, the FTC alleged (and ultimately proved):
The account holders have not authorized the Defendants to obtain access to or sell their confidential customer phone records. Instead, to obtain such information, Defendants have used, or caused others to use, false pretenses, fraudulent statements, fraudulent or stolen documents or other misrepresentations, including posing as a customer of a telecommunications carrier, to induce officers, employees, or agents of telecommunications carriers to disclose confidential customer phone records. Defendants have sold the confidential customer phone records that they have obtained to their clients.
Id. at 21-22 ¶ 10 (emphasis added).[4] As its cause of action against Accusearch, the *1206 FTC claimed “Aceusearch violated the FTCA by ‘directly or through their employees or agents, ... obtaining] and s[elling] to third parties confidential customer proprietary network information without the knowledge or consent of the customer.’ ” Id. at 22 ¶ 12.
As is clear from the complaint, the FTC’s allegations of FTCA violations stemmed not from the content of the information Aceusearch was disclosing (or developing), but from Accusearch’s own conduct in (1) offering the information for sale, (2) soliciting and encouraging third-parties to violate the law in obtaining the information, and (3) ultimately paying these third parties and selling the information to consumers. Accusearch’s duty to refrain from engaging in these unfair business practices does not derive from its status or conduct as an Internet website that publishes content.[5] Rather, the duty the FTC alleged Aceusearch violated derives from the expectations that a business would not engage in unlawful or unfair business practices in general (whether the business is a conventional bricks-and-mortar operation or exists entirely on the World Wide Web). See Barnes, 565 F.3d at 566. While Internet publication of the confidential phone data, by itself, may very well be protected by the CDA, the CDA does not immunize, expressly or implicitly, the manner in which Aceusearch conducted its business. In sum, the CDA does not extend to immunize a party’s conduct outside the realm of the Internet just because it relates to the publishing of information on the Internet.
Rather than follow the majority’s disposition of this issue-—extending the definitions of “responsible” and “develop” to include solicitation of information based on consumer selections off of Accusearch’s website—I would limit the analysis to whether the CDA even applies in the first place. I would conclude that it does not, and that Aceusearch therefore was liable for its unfair business practices in violation of the FTCA.

. To satisfy the injury prong for FTCA liability, the FTC claimed the "invasion of privacy *1206 and security resulting from obtaining and selling confidential customer phone records without the consumers’ authorization causes substantial harm to consumers and the public, including, but not limited to, endangering the health and safety of consumers.” Id. at 22 ¶ 11.

. If Aceusearch had run a traditional business out of a physical location and offered similar services, it would seem the FTC would have the same unfair business practices complaint. Nothing would immunize Accusearch’s conduct had it chosen to deliver the confidential telephone records to requesters through hard copy print-outs either in person or through the mail. Accusearch's duty to refrain from engaging in the solicitation and distribution of unlawfully-obtained confidential telephone records should not depend on the medium within which it chooses to operate.